UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| FOUNTAIN LEASING, LLC, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | |
| v. | ) | No.: 3:12-CV-317 |
| | ) | (VARLAN/GUYTON) |
| DAVID N. KLOEBER, JR., | ) | |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | |
| | ) | |

**MEMORANDUM OPINION & ORDER**

This civil matter is before the Court on plaintiff and counter-defendant Fountain Leasing, LLC's ("Fountain Leasing") Motion to Dismiss Counterclaim [Doc. 6], in which Fountain Leasing seeks dismissal of defendant David N. Kloeber, Jr.'s ("Kloeber") counterclaim filed in this case [Doc. 3], asserting claims for breach of contract, misrepresentation, and negligence against Fountain Leasing. Kloeber has submitted a response [Doc. 9], to which Fountain Leasing replied [Doc. 10]. For the reasons stated herein, Fountain Leasing's motion [Doc. 6] will be granted.

**I.      Background**

In 2008 and 2009, Fountain Leasing entered into two separate equipment lease agreements with Montie's Resources, LLC ("Montie's") [Doc. 6 at 1]. The first lease agreement, dated November 6, 2008, provides for the lease by Montie's of a "Cat D10N Dozer – SN:2YD1201/7T-2630" [*Id.* at 2]. The second agreement, dated February 20, 2009, provides for the lease by Monties of a "92 Cat D10N [D]ozer w/ multi shank ripper

– SN:2YD00335" [*Id.*]. Kloeber, who had an interest in the business of Montie's, signed two "Continuing Guaranty of Lease" agreements with Fountain Leasing in relation to the two bulldozer leases [*Id.*]. Montie's subsequently defaulted under the terms of the lease agreements and filed for bankruptcy, as did Bart Montanari ("Montanari"), a principal of Montie's. When Fountain Leasing attempted to collect the defaulted payments from Klober, Kloeber refused to make such payments, prompting the filing of this lawsuit.

In his response/counter-complaint, Kloeber alleges that in November 2008, Montanari received an invoice on the first D10 bulldozer from Frattalone Tractor Company ("Frattalone") for $175,000, but altered the invoice to indicate that the purchase price of the bulldozer was $275,000 [Doc. 3 ¶ 5]. This altered invoice served as the basis for the first lease agreement between Montie's and Fountain Leasing [*Id.* at ¶ 6]. Kloeber was unaware of the alteration at the time he entered into the guaranty contract with Fountain Leasing, and claims that both Fountain Leasing and Montanari concealed the true value of the bulldozer from him [*Id.* at ¶ 8]. Kloeber claims that Fountain Leasing knew that the invoice overstated the purchase price for the bulldozer [*Id.* at ¶ 9], and that Fountain Leasing later admitted that the $275,000 purchase price exceeded the value of the bulldozer to an associate of Kloeber [*Id.*]. When Frattalone received the check for $275,000, Kloeber claims a $100,000 check was remitted to Montanari prior to Montie's filing for bankruptcy [*Id.* at ¶¶ 13, 14].

Kloeber alleges that Fountain Leasing permitted Montie's to continue to use the bulldozer despite the company having filed for bankruptcy, and by the time Fountain

Leasing allowed the bulldozer to be sold, it had greatly depreciated so that Fountain Leasing received less than it could have had the bulldozer been sold earlier, which prompted Fountain Leasing to seek more from Kloeber as guarantor [*Id.* ¶ 16].

As a result of these actions, Kloeber asserts several specific claims against Fountain Leasing: 1) breach of contract for breaching the duty of good faith and fair dealing; 2) misrepresentation, since Fountain Leasing represented the bulldozer to be worth more than it was; and 3) negligence for Fountain Leasing's failure to act "as a reasonably prudent lender/lessor" [Doc. 3 ¶¶ 33-34].

## II.  Standard of Review

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A party may move to dismiss for failure to state a claim pursuant to Rule 12(b)(6). In order to survive a Rule 12(b)(6) motion, a complaint must contain allegations supporting all material elements of the claims. *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008). In determining whether to grant a motion to dismiss, all well-pleaded allegations must be taken as true and must be construed most favorably toward the non-movant. *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003). Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Nor will an "unadorned, the-

3

Case 3:12-cv-00317-TAV-HBG   Document 13   Filed 08/28/13   Page 3 of 14   PageID #: 190

defendant-unlawfully harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A pleading must "contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436-37 (6th Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

**III. Analysis**

Fountain Leasing argues that all three of Kloeber's counterclaims fail to state a claim upon which relief can be granted. As this action involves a dispute over a guaranty agreement, the Court first notes that guaranties on commercial leases or loans "are special contracts under Tennessee law." *Suntrust Bank v. Dorrough*, 59 S.W.3d 153, 156 (Tenn. Ct. App. 2001). "In order to facilitate the extension of credit, Tennessee does not favor guarantors and will construe a guaranty against the guarantor as strongly as the language will permit." *Id.* (citing *Squibb v. Smith*, 948 S.W.2d 752, 755 (Tenn. Ct. App. 1997)). With this background in mind, the Court will address each of Kloeber's counterclaims in turn.

4

### A. Breach of Contract Claim

Kloeber claims that Fountain Leasing "breached its duty of good faith and fair dealing, and therefore breached the Guaranty, by either knowingly or recklessly paying Frattalone $275,000.00 for the Bulldozer, which had a market value of no more than $175,000," and similarly breached the Guaranty "by failing to timely repossess the Bulldozer and prevent significant depreciation" [Doc. 3 ¶¶ 21, 22]. In support of its motion to dismiss, Fountain Leasing argues that breach of the implied duty of good faith and fair dealing cannot serve as an independent basis for a breach of contract claim. Fountain Leasing also argues that there are no terms in the guaranty contract or lease agreement related to the price of the bulldozer or related to a specific time for repossession. Kloeber, in response, argues that the breach of contract claim is not solely based upon the covenant of good faith and fair dealing but also upon "implied duties," specifically, Fountain Leasing's duties to perform due diligence prior to purchasing the bulldozer, to not overpay for the price of the bulldozer, and to timely repossess the bulldozer. Fountain Leasing replies that there are no implied duties alleged in the complaint, and that, even if those duties could have been imposed, the express terms of the guaranty override them.

"[T]he basic elements of a breach of contract case under Tennessee law must include (1) the existence of a contract, (2) breach of the contract, and (3) damages which flow from the breach." *Life Care Ctrs. of Am. v. Charles Town Assocs. L.P.*, 79 F.3d 496, 514 (6th Cir. 1996). Under Tennessee law, "contracts may be accompanied by

5

implied duties, which can result in a breach." *Fed. Ins. Co. v. Winters*, 354 S.W.3d 287, 291 (Tenn. 2011). Implied obligations, however, are not favored in Tennessee, and "[t]hey 'can be justified only upon the ground of legal necessity arising from the terms of the contract.'" *Field v. Ladies' Hermitage Assoc.*, No. M2011-01736-COA-R3-CV, 2012 WL 5193368, at *4 (Tenn. Ct. App. Oct. 19, 2012) (quoting *Kroger Co. v. Chem. Sec. Co.*, 526 S.W.2d 468, 471 (Tenn. 1975)). "[B]efore a covenant will be implied in the express terms of the contract, or in view of the customs and practices of the business to which the contract relates, it must appear therefrom that it was so clearly in the contemplation of the parties that they deemed it unnecessary to express it . . . ." *Id.* (quotation omitted). "It is well established that a court cannot add an implied contract term that is inconsistent with an express contract." *Tenn. Valley Auth. v. Exxon Nuclear Co., Inc.*, 753 F.2d 493, 497 (6th Cir. 1985) (citation omitted).

While Kloeber alleges the breach of several "implied duties," or terms, of the contract in his response to Fountain Leasing's motion to dismiss, the Court concludes that none of these gives rise to a claim for which relief could be granted. Kloeber has not alleged that the implied duties of due diligence, paying market value, and timely repossession are legal necessities under the guaranty agreement between Kloeber and Fountain Leasing, so as to permit the Court to read them into the guaranty. Nor does Kloeber allege that it is common practice or custom in the business of equipment financing for the commercial lender-lessor to conduct due diligence on behalf of a guarantor. Moreover, if the Court were to incorporate these implied duties, or covenants,

6

into the terms of the guaranty, they would be inconsistent with the express terms of both the guaranty as well as the underlying lease agreement. In pertinent part, the guaranty provides as follows:

> [g]uarantor consents that without notice to or further assent by Guarantor, the obligation of Lessee or of any other party for the liabilities hereby guaranteed may be renewed, extended, modified, prematured, released, settled or compromised by Lessor in liquidation, adjustment, or otherwise, as it may deem advisable, and that any security or securities which Lessor may hold may be exchanged, sold, released, or surrendered by it, as may deem advisable, without impairing or affecting the obligation of Guarantor hereunder.

[Doc. 1-1 at 6]. An implied term requiring Fountain Leasing to pay a certain price for the bulldozer or timely repossess the bulldozer would be inconsistent with this consent clause which permits Fountain Leasing to modify the lease agreement as well as dispose of the bulldozer in a number of ways. Similarly, the underlying lease agreement provides numerous remedies available to Fountain Leasing in the event of a breach, including not only repossession but also resale and/or suit for monetary damages [Doc. 1-1 ¶ 15]. As neither the guaranty nor underlying lease agreement require Fountain Leasing to repossess the bulldozer, incorporating a term that required timely repossession would contradict the language of the contracts themselves and create obligations outside of the scope of the parties' agreement. Moreover, reading any implied term into the lease agreement would offset the merger clause which states that the lease "constitutes the entire agreement between [the] parties" [*Id.* at ¶ 27]. Thus the Court concludes that Kloeber cannot base a breach of contract claim on any implied terms of his agreement with Fountain Leasing.

7

To the extent that Kloeber alleges a breach of contract claim solely on the basis of a breach of the covenant of good faith and fair dealing, the Court finds that this alone is insufficient grounds to state a claim upon which relief may be granted. As this Court has stated previously, a "'[b]reach of the implied covenant of good faith and fair dealing is not an independent basis for relief.'" *Almanza v. Baird Tree Serv.*, No. 3:10-CV-311, 2012 WL 4758276, at *12 (E.D. Tenn. Oct. 5, 2012) (Jordan, J.) (quoting *Duke v. Browning-Ferris Indus. of Tenn.,Inc.*, No. W2005-00146-COA-R-3-CV, 2006 WL 1491547, at *9 (Tenn. Ct. App. Nov. 13, 2006)). Although Tennessee law does permit such a claim, it serves as part of a breach of contract action rather than serving as a cause of action in and of itself. *Lyons v. Farmers Ins. Exch.*, 26 S.W.3d 888, 894 (Tenn. Ct. App. 2000).

For these reasons, the Court finds that Kloeber has not alleged a breach of the guaranty other than the covenant of good faith and fair dealing, so that his contract claim will be dismissed.

### B. Misrepresentation

Kloeber also asserts a claim for misrepresentation against Fountain Leasing for misrepresenting the fair market value of the bulldozer. In support of its motion to dismiss this claim, Fountain Leasing argues that Kloeber has failed to meet the specificity requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Fountain Leasing contends that Kloeber does not allege any representation beyond Fountain Leasing's act of entering into the guaranty and lease agreements, neither of which can serve as a

"representation" to establish a fraud claim. Kloeber also could not have reasonably relied upon any alleged representation as to price, Fountain Leasing contends, because the guaranty agreement allowed Fountain Leasing to dispose of the collateral at any price or for no value at all. In response, Kloeber argues that he has alleged specific facts necessary to comply with Rule 9(b)'s specificity requirements, and that Fountain Leasing's act of entering into the guaranty and lease is sufficient to state a fraud claim.

Under Rule 9(b) of the Federal Rules of Civil Procedure, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *See Advocacy Org. for Patients and Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir. 1999) ("'[A]llegations of fraudulent misrepresentation[s] must be made with sufficient particularity and with a sufficient factual basis to support an inference that they were knowingly made.'") (quoting *Coffey v. Foamex L.P.*, 2 F.3d 157, 162 (6th Cir. 1993)).

> [A] complaint is sufficient under Rule 9(b) if it alleges the time, place, and content of the alleged misrepresentation on which [the deceived party] relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud, and enables defendants to prepare an informed pleading responsive to the specific allegations of fraud.

*United States ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503, 518 (6th Cir. 2009) (internal quotations omitted). "A court need not accept claims that consist of no more than mere assertions and unsupported or unsupportable conclusions." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 876 (6th Cir. 2006) (citing *Kottmyer v. Maas*, 436 F.3d

9

684, 688 (6th Cir. 2006)). Allegations of reliance must also be pled with particularity. *Evans v. Pearson Enters.*, 434 F.3d 839, 852-53 (6th Cir. 2006).

In order to state a claim for fraud under Tennessee law, a plaintiff must plead the following elements: (1) a representation of an existing or past fact; (2) the representation was false when made; (3) the representation was in regard to a material fact, (4) the false representation was made knowingly, without belief in its truth, or recklessly; (5) the plaintiff reasonably relied on the misrepresentation; and (6) the plaintiff suffered damages as a result of the misrepresentation. *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008); *see also Dobbs v. Guenther*, 846 S.W.2d 270, 274 (Tenn. Ct. App. 1992) (grouping the requirements into four elements).

In this case, after reviewing the allegations as set forth in Kloeber's counter-complaint, the Court concludes that, assuming the price set forth in the leasing application could serve as a representation,[1] it was not reasonable for Kloeber to rely upon this price in agreeing to guaranty the lease, given the language of the guaranty agreement. As noted above, by agreeing to the terms of the guaranty, Kloeber agreed that the bulldozer could be exchanged, sold, released, or surrendered by Fountain Leasing, for less than fair market value or for no value at all. Therefore, it was unreasonable for Kloeber to rely upon the value of the bulldozer as collateral to offset his potential

---

[1] The Court notes that the only document associating a monetary value with the bulldozer is the lease application, which states the "equipment cost" as $275,000 [Doc. 1-1 at 7]. From this, it is unclear if Fountain Leasing ever represented "the fair market value" of the bulldozer to be $275,000, rather than the merely representing Fountain Leasing's costs in obtaining the bulldozer.

10

liability, because the bulldozer's value could have varied widely by the time it was sold, or could have been released for no value at all.

In addition, the Court finds that Kloeber's allegations do not meet the heightened requirements of Rule 9 of the Federal Rules of Civil Procedure. While Kloeber sets forth the content of the misrepresentation, Kloeber does not provide specific allegations as to the "fraudulent scheme" involving Fountain Leasing and Montanari, or to Fountain Leasing's fraudulent intent. Kloeber's counter-complaint is missing a connection between the misstated price on the lease application and his conclusion that it was part of a scheme to defraud him as the guarantor. Although Kloeber attempts to set forth specific allegations to prevent his claim from being dismissed, the Court concludes that they are only amount to unsupported assertions and are thus insufficient to state a claim for relief. Accordingly, Kloeber's fraud claim will be dismissed.

**C.    Negligence**

Finally, Kloeber alleges that Fountain Leasing was negligent by breaching similar duties to those which Kloeber alleged were breached under the guaranty contract, such as paying in excess of fair market value, failing to perform due diligence, and failing to timely repossess the bulldozer upon default. Fountain Leasing moves to dismiss this claim because it had no duty to Kloeber to perform due diligence related to its lease with Montie's and because of the language of the guaranty contract, as has been previously discussed. Kloeber, in response, argues that Fountain Leasing did have a duty "to not negligently lend money far in excess of the fair market value of the collateral" [Doc. 9 at

11

11]. Kloeber also argues that, given the "obvious fraud" of the altered invoice, Fountain Leasing had a duty to investigate.

To bring a successful negligence claim under Tennessee law, the plaintiff must establish each of the following elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal, causation. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000) (citing *White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998)). Under Tennessee Law, when two parties enter into a contractual agreement, their obligations to each other arise out of the contract itself, so that a violation of the contractual duty supports an action in contract rather than in tort. *See Permobil, Inc. v. Am. Express Travel Related Servs., Inc.*, 571 F. Supp. 2d 825, 842 (M.D. Tenn. 2008) ("[I]f the only source of duty between a particular plaintiff and defendant is their contract with each other, then a breach of that duty, without more, ordinarily will not support a negligence action.") (quoting *Thomas & Assocs., Inc. v. Metro. Gov't of Nashville*, No. M2001-00757-COA-R3-CV, 2003 WL 21302974, at *6 (Tenn. Ct. App. June 6, 2003)). This reflects the idea that "[p]arties engaged in a commercial transaction pursue their own self-interest and understand and expect that the parties with whom they are dealing are doing likewise." *Dick Broadcasting Co., Inc. of Tenn. V. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 674. Without a breach of a duty, there can be no negligence. *Thomas*, 2003 WL 21302974 at *5 (quoting *Chattanooga Warehouse & Cold Storage Co. v. Anderson*, 210 S.W. 153,

155 (Tenn. 1919)). In the specific context of guaranty agreements, the Tennessee Court of Appeals has held that:

> unless the guaranty agreement provides otherwise, there is no duty on the party to whom the guaranty is directed to notify the guarantor of the business practices or financial difficulties of the party whose performance is being guaranteed, whether such practices occurred prior to the execution or during the term of the guaranty and whether such activities were known or should have been known by the party guaranteed.

*Transouth Mortg. Corp. v. Keith*, 1985 WL 4677 (Tenn. Ct. App. Dec. 24, 1985).

In this case, Kloeber has not alleged a legal duty that Fountain Leasing owed to Kloeber beyond the contractual relationship between the parties. Although Kloeber argues that Fountain Leasing's duty of due diligence and prompt repossession stem from its duty as a "reasonably prudent lender/lessor," the only relationship between Kloeber and Fountain Leasing is the guaranty agreement. That agreement sets forth the duties between the parties, as supplemented by any of the applicable duties in the underlying lease agreement. Kloeber has not pointed to any statute or case law which holds that commercial lenders, or those who enter into guaranty agreements, owe a duty of care to others, much less a duty to perform due diligence on behalf of their counterpart in a transaction. The contract between the two parties served as the basis of their duties to each other, and Kloeber may not rely now upon tort law to create duties which could have been made a part of the contract when there is no independent basis for otherwise imposing such duties upon Fountain Leasing.

In an analogous context, Tennessee courts have held that the law does not generally "impose fiduciary or similar duties on banks with respect to their customers,

13

depositors, or borrowers absent special circumstances." *Power & Tel. Supply Co., Inc. v. SunTrust Banks, Inc.*, 447 F.3d 923, 932 (6th Cir. 2006) (citing *Glazer v. First Am. Nat'l Bank*, 930 S.W.2d 546, 550 (Tenn. 1996)). This holding is based upon the fact that such relationships generally involve "arm's-length dealings." *Id.* Here, Kloeber has not alleged any special relationship with Fountain Leasing beyond the guaranty agreement, which was part of an arms-length transaction between two parties who were pursuing their own interests. Permitting a negligence claim in these circumstances would be inappropriate in light of the agreement between the parties and particularly in light of Tennessee's policy of construing a guaranty against the guarantor. Accordingly, plaintiff's negligence claim will be dismissed.

**IV. Conclusion**

For the reasons stated herein, Fountain Leasing's Motion to Dismiss Counterclaim [Doc. 6] will be **GRANTED** and Kloeber's claims against Fountain Leasing will be **DISMISSED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE

ENTERED AS A JUDGMENT

  s/ Debra C. Poplin
  CLERK OF COURT