UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| FOUNTAIN LEASING, LLC, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | No.: 3:12-CV-317-TAV-HBG |
| DAVID N. KLOEBER, JR., | ) ) ) | |
| Defendant. | ) ) | |

# MEMORANDUM OPINION

This civil matter is before the Court on plaintiff Fountain Leasing, LLC's Motion for Summary Judgment [Doc. 24], in which plaintiff seeks summary judgment on its claims pertaining to the guaranty agreements entered into by defendant David N. Kloeber, Jr. Defendant submitted a response opposing the motion and making a request for additional discovery [Doc. 26], to which plaintiff submitted a reply [Doc. 27].[1] Upon review of the arguments of the parties, and in light of the relevant case law, plaintiff's motion [Doc. 24] will be granted.

**I.      Background**

In 2008 and 2009, plaintiff entered into two separate equipment lease agreements with Montie's Resources, LLC ("Montie's") [Doc. 1-1] for the purchase of two

---

[1] On May 22, 2014, defendant submitted a motion to file a supplemental response in opposition to the pending motion [Doc. 34]. Upon review of the motion as well as the proposed document [Doc. 34-4], the Court will **DENY** defendant's request. Even if the Court were to consider the arguments set forth in the supplemental brief, the Court would reach the same conclusion in granting plaintiff's motion for summary judgment.

bulldozers. The first lease agreement, dated November 6, 2008, provides for the lease by Montie's of a "Cat D10N Dozer – SN:2YD1201/7T-2630" [*Id.* at 8]. The second agreement, dated February 20, 2009, provides for the lease by Montie's of a "92 Cat D10N [D]ozer w/ multi shank ripper – SN:2YD00335" [*Id.* at 1]. Defendant, who had an interest in the business of Montie's, signed two "Continuing Guaranty of Lease" agreements with plaintiff in relation to the two bulldozer leases [*Id.* at 6, 12], guaranteeing to be held liable for Montie's liability on the leases if Montie's failed to make payments. Montie's subsequently defaulted under the terms of the lease agreements and filed for bankruptcy, as did Mr. Bart Montanari, the principal for Montie's who carried out the lease transactions and was responsible for purchasing the bulldozers. When plaintiff attempted to collect the defaulted payments from defendant, as the guarantor, defendant refused to make such payments, prompting the filing of this lawsuit. In its complaint [Doc. 1], plaintiff seeks recovery on the defaulted amounts in the leases per the guaranty agreements, prejudgment interest, and attorney fees [*Id.*].[2]

## II. Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The

---

[2] In his response/counter-complaint defendant alleged counterclaims against defendant for breach of contract, misrepresentation, and negligence based on the alleged conduct of Mr. Montanari in altering the purchase price of the 2008 bulldozer [Doc. 3]. Upon motion by plaintiff [Doc. 5], however, these counterclaims were dismissed by the Court in a Memorandum Opinion & Order entered August 28, 2013 [Doc. 13], so that only plaintiff's claims remain before the Court.

2

moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

"Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in

3

other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

**III. Analysis**

Plaintiff moves for summary judgment based on its argument that defendant cannot create a genuine issue of material fact as to his liability under the guaranty agreements. In support of this position, plaintiff relies upon defendant's admission that the leases are in default and that no payment has been made, while also relying upon the language of the guaranty agreements attached to the complaint [Doc. 1-1]. As to the amounts owed under the lease, prejudgment interest, late fees, and attorney fees, plaintiff submitted the affidavit of Mr. Lee Iglehart, the Vice-President of Fountain Leasing, LLC, illustrating the amounts owed as of the date of the filing of plaintiff's motion [Doc. 24-1]. In response, defendant first argues that the Court's ruling on the motion should be delayed until discovery is completed. Specifically, defendant submits that he requires discovery of the relevant documentation and records underlying the lease transactions at issue, as well as any communications between plaintiff and Mr. Montanari or Montie's regarding the leases. In addition, defendant submits that he wishes to depose several of plaintiff's employees regarding the lease transactions. As to the merits of plaintiff's claims, defendant argues that there is a genuine issue of material fact as to whether there was an enforceable contract, based upon the parties' intent, as well as to the existence and amount of plaintiff's damages.

4

### A. Request for Discovery

When a summary judgment motion is filed, the party opposing the motion may, by affidavit under Rule 56(d) (formerly Rule 56(f)), explain why he or she is unable to present facts essential to justify the party's opposition to the motion. *See Wallin v. Norman*, 317 F.3d 558, 564 (6th Cir. 2003). The Rule provides in pertinent part:

> **(d) When Facts Are Unavailable to the Nonmovant.**
> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its position, the court may:
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). "Before ruling on summary judgment motions, a district judge must afford the parties adequate time for discovery, in light of the circumstances of the case." *Plott v. Gen. Motors Corp.*, 71 F.3d 1190, 1195 (6th Cir. 1995). However, the party seeking the additional discovery bears the burden of "demonstrat[ing] why such discovery is necessary." *Summers v. Leis*, 368 F.3d 881, 887 (6th Cir. 2004). Bare allegations or vague assertions of the need for additional time for discovery are not enough. *United States v. Cantrell*, 92 F. Supp. 2d 704, 717 (S.D. Ohio 2000) (citing *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 409 (6th Cir. 1998)). The nonmoving party "must show how postponement of a ruling on the motion will enable him to rebut the motion for summary judgment." *Lyons v. Ray*, No. 5:05-405-JMH, 2007 WL 679005, at *4 (E.D. Ky. March 1, 2007) (quoting *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 409 (6th Cir. 1998)).

5

Assuming that defendant's request, along with the affidavit of his counsel, would otherwise be sufficient for this Court to defer ruling on plaintiff's motion, the Court finds that good cause does not exist to defer its ruling at this time. Defendant's response containing its request for deferral pending discovery [Doc. 26] was filed December 18, 2013. On March 25, 2014, the parties submitted a Joint Status Report [Doc. 29], indicating that discovery had been completed. Defendant has not shown that additional time is necessary or that there is any additional discovery to be taken at this time. Accordingly, defendant's request for a deferred ruling and/or additional discovery is **denied as moot**, and the Court will consider the merits of the parties' arguments based on the record before it.

### B. Defendant's Liability under the Guaranty Agreements

As this action involves a dispute over a guaranty agreement, the Court first notes that guaranties on commercial leases or loans "are special contracts under Tennessee law." *Suntrust Bank v. Dorrough*, 59 S.W.3d 153, 156 (Tenn. Ct. App. 2001). "In order to facilitate the extension of credit, Tennessee does not favor guarantors and will construe a guaranty against the guarantor as strongly as the language will permit." *Id.* (citing *Squibb v. Smith*, 948 S.W.2d 752, 755 (Tenn. Ct. App. 1997)). In any contract, the elements for breach under Tennessee law include (1) the existence of a contract, (2) breach of the contract, and (3) damages which flow from the breach." *Life Care Ctrs. of Am. v. Charles Town Assocs. L.P.*, 79 F.3d 496, 514 (6th Cir. 1996). As to the existence of a contract, and the terms of the parties' agreement, "[t]he cardinal rule of contract

6

interpretation is that the court must attempt to ascertain and give effect to the intention of the parties." *Simonton v. Huff*, 60 S.W.3d 820, 825 (Tenn. Ct. App. 2000). In ascertaining intent, "the court must examine the language of the contract, giving each word its usual, natural, and ordinary meaning." *Id.* (citing *Wilson v. Moore*, 929 S.W.2d 367, 373 (Tenn. Ct. App. 1996)). "Where the language in a contract is clear and unambiguous, then its literal meaning controls the outcome of a contract dispute, and the court may not look beyond the four corners of the contract to ascertain the parties' intention." *Cummings Inc. v. Dorgan*, 320 S.W.3d 316, 333 (Tenn. Ct. App. 2009).

In this case, each of the guaranty agreements indicates the terms of the lease as being for 48 months at a rate of $3,353.00 per month for the November 2008 bulldozer lease and $6,586.25 per month for the February 2009 bulldozer lease, respectively [Doc. 1-1 at 6, 12]. Each agreement then states that defendant, as guarantor:

> hereby guarantee[s]to Lessor, its successors, and assigns, the prompt and unconditional payment of any obligation or liability of Lessee to Lessor, it[s] successors or assigns, under this lease including but not limited to any and all sums, late charges, disbursements, expenses, legal fees, and any deficiency upon enforcement of collateral deposited or otherwise, if any, in connection with all such obligations.

[*Id.*]. The agreement also states that the guarantor agrees that the lessee's, that is, Montie's obligations, may be "modified, prematured, released, settled, or compromised" by plaintiff, and that any security held by plaintiff, that is, the bulldozers, could be "exchanged, sold, released, or surrendered by it, as may deem advisable, without impairing or affecting the obligation of Guarantor hereunder" [*Id.*].

7

Defendant has not alleged or presented any evidence that this language contains any ambiguity or that the terms are confusing or otherwise unclear. Rather, defendant states in his affidavit that his intention was to only "finance the actual cost of the Bulldozer," [Doc. 26-1 ¶ 5], apparently referring to the 2008 lease for the first bulldozer, which the Court interprets as meaning that defendant only intended to be liable for the actual price of the bulldozer.[3] This statement, however, contradicts the plain language of the guaranty agreement indicating the amount for which defendant would be liable and indicating that defendant guaranteed "the prompt and unconditional payment of an obligation or liability" [Doc. 1-1 at 12], including late charges, legal fees, and deficiency from any sale. The language of the contract contains no language indicating that defendant intended to limit his liability to the actual value of the bulldozer, and does not discuss the value of the bulldozer as bearing any connection to defendant's payment obligation as the guarantor. In addition, the guaranty agreement states that defendant would be obligated even in the event of the disposition of the bulldozer itself, further undermining defendant's contention that he only intended to be responsible for the market value of the bulldozer. Accordingly, and in light of the plain language of the guaranty agreement, the Court finds that the statements contained within defendant's affidavit have not created a genuine issue of material fact as to his liability under the terms of the guaranty agreements. *See Jadco Enters., Inc. v. Fannon,* --- F. Supp. 2d ---, 2014 WL 66521, *7 (E.D. Ky. Jan. 8, 2014) (citing *Devine v. Jefferson Cnty.*, 186 F. Supp. 2d 742, 744 (W.D. Ky. 2001)) (noting that self-serving affidavits cannot create

---

[3] Defendant admits, however, that he personally guaranteed $275,000 to plaintiff [*Id.*].

genuine issue of material fact); *see also Allen v. Ohio Dep't of Job & Family Servs.*, 697 F. Supp. 2d 854, 891 (S.D. Ohio 2010) (citing *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 925 (7th Cir. 2004) (noting that self-serving affidavits without factual support in the record carry no weight on summary judgment)).[4]

The Court reaches the same conclusion with respect to defendant's arguments regarding the existence of damages, the third element for a breach of contract claim. Defendant argues that there is a question of fact as to whether plaintiff is entitled to damages based on the allegations that plaintiff permitted Montie's to continue using the equipment after it filed for bankruptcy and delayed the sale of the bulldozers, obtaining less value than could have been obtained through an earlier sale. Assuming that plaintiff permitted Montie's to possess the bulldozers after default and delayed their sale, the Court finds these facts to be immaterial to the question of whether plaintiff is entitled to the amounts owed under the guaranty agreements. As previously discussed, defendant agreed that the bulldozers could be "exchanged, sold, released, or surrendered . . . without impairing or affecting" defendant's obligations under the guaranty agreement [Doc. 1-1 at ¶ 6]. Defendant's attempt to add a requirement of mitigation is contrary to the

---

[4] Although not explicitly presented as a defense in his brief, to the extent that defendant argues the guaranty contract is unenforceable because it was obtained as a result of fraud on the part of Mr. Montanari, the Court notes that defendant has presented no evidence connecting plaintiff with any fraudulent conduct on the part of Montie's or Mr. Montanari to support this defense. Similarly, to the extent defendant has argued that the breach of contract was the result of plaintiff's own breach of contract or negligence, the Court notes that it has previously ruled on these issues in its Memorandum Opinion & Order dismissing defendant's counterclaims [Doc. 13] and finds that there is no genuine issue of material fact as to their availability as a defense to plaintiff's claims under the guaranty contracts at issue.

9

language of the agreement and is insufficient to preclude summary judgment being entered in plaintiff's favor, particularly in light of the fact that guaranty agreements are to be construed against the guarantor. *See Squibb*, 948 S.W.2d at 755. The agreement indicates that the bulldozers could be disposed for little or no value without affecting defendant's obligations to pay in the event of default. Plaintiff's damages in this case, then, are based on the unpaid amounts under the leases per the guaranty agreements, regardless of the value of the bulldozers as collateral. In addition, while plaintiff argues that he expects to learn about the nature of the agreements between plaintiff and Montie's and the underlying documentation, plaintiff has presented no evidence in this regard which would create a genuine issue of material fact as to defendant's liability. Thus, the Court finds there is no triable issue as to whether plaintiff is entitled to the amounts set forth under the guaranty agreements.

Accordingly, the Court concludes that there is no genuine issue of material fact as to plaintiff's claims and plaintiff is entitled to summary judgment on defendant's obligations under the guaranty agreements. As to the precise amount of damages, the Court finds it appropriate for plaintiff to submit a motion and proposed order of judgment with respect to the final amounts owed by defendant.

## IV. Conclusion

For the reasons previously discussed, and in light of the arguments of the parties as well as the prevailing case law, plaintiff's Motion for Summary Judgment [Doc. 24]

will be **GRANTED** and judgment will be entered in plaintiff's favor, pending submission by plaintiff of the final amounts owed under the guaranty agreements.

ORDER ACCORDINGLY

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE